1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

| | |
|---|---|
| 11  RICHARD C. ARELLANO, | ) No. EDCV 15-192 FFM |
| 12                         Plaintiff, | ) **MEMORANDUM DECISION AND** |
| 13       v. | ) **ORDER** |
| 14  CAROLYN W. COLVIN, | ) |
| 15  Acting Commissioner of the Social | ) |
| 16  Security Administration, | ) |
| 17                         Defendant. | ) |

18
19                    **I.  INTRODUCTION**
20         Plaintiff Richard C. Arellano ("Plaintiff") brings this action seeking to overturn
21  the decision of the Commissioner of the Social Security Administration denying his
22  application for Disability Insurance Benefits.  Pursuant to 28 U.S.C. § 636(c), the parties
23  consented to the jurisdiction of the undersigned United States Magistrate Judge.  (Dkt.
24  Nos. 11, 13).  Pursuant to the February 10, 2015, Case Management Order, (Dkt. No. 8),
25  on December 15, 2015, the parties filed a Joint Stipulation ("Joint Stip.") detailing each
26  party's arguments and authorities, (Dkt. No. 24).  The Court has reviewed the Joint
27  Stipulation and the administrative record ("A.R.") filed by defendant on August 7, 2015,
28  (Dkt. No. 17).

For the reasons stated below, the decision of the Commissioner is affirmed.

## II.    PRIOR PROCEEDINGS

On June 6, 2012, Plaintiff applied for Disability Insurance Benefits based on alleged physical impairments and asserting disability since October 19, 2011.  (A.R. 161–85).  Plaintiff alleged the following disabling impairments: sciatica, diabetes, high blood pressure, two herniated discs, neuropathy, and arthritis.  (A.R. 180).  The Administrative Law Judge ("ALJ"), Marti Kirby, examined the records and heard testimony from Plaintiff and a vocational expert ("VE") on September 30, 2013.  (A.R. at 37–64).

At the hearing, Plaintiff testified that he experiences pain in his upper right abdominal area, in his buttocks running down his legs to his feet, and in his lower back.  (A.R. 55).  In order to control the pain, Plaintiff takes Tramadol and Morphine.  (A.R. 47).  Nonetheless, Plaintiff claimed that his pain is never less than a "six" on a scale from "one to ten," with "ten" being the most intense pain.  (A.R. 45).  Because of his pain and limitations, Plaintiff stated that he uses a wheelchair whenever he leaves his house, which he does only "once every two months."  (A.R. 57).  Plaintiff further testified that his wife does all of the household chores and that he spends almost all of every day lying down.  (A.R. 57–60).  According to Plaintiff, he has had trouble seeing a specialist for his pain because his medical referrals and insurance approvals lapse before he can schedule an appointment.  (A.R. 47–48).  However, Plaintiff did acknowledge that he received three epidural shots in an attempt to relieve his pain, but further stated that only the first shot provided any pain relief and that the relief lasted only a single day.  (A.R. 51–52).  In addition to his other impairments, Plaintiff suffers from diabetes, but testified that he is able to control those symptoms with medication and dietary restrictions.  (A.R. 45).

During the hearing, the ALJ asked the VE, Randi Langford-Hetrick, what work a person of Plaintiff's age, education, and past work experience could perform if that

2

person were limited in the following ways:

> [T]he individual is restricted to light work with standing and walking [for] six out of eight [hours], but [for] no more than 15 to 20 minutes at a time. [The individual can] sit[] [for] six [hours] out of eight [hours], but with brief position changes after approximately 30 to 45 minutes. This individual can occasionally bend, stoop, climb steps or balance, but [can] rarely kneel, crawl, squat or crouch. No climbing ladders, ropes or scaffolds, no work at unprotected heights, around moving machinery or other hazards, no jobs requiring hyper vigilance or intense concentration on a particular task . . . where the individual couldn't be off task for even the briefest amount of time, like watching a surveillance monitor where safety might be an issue. The individual should avoid concentrated exposure to vibrations, walking on [un]even terrain, and there should be no repetitive or constant push and pull with the lower extremities, such as operating foot pedals.

(A.R. 60). The VE testified that a person with those limitations could perform work as an office helper, a storage facility clerk, or a cashier. (A.R. 61). The VE also stated that Plaintiff's restriction to standing or walking for fifteen to twenty minutes at a time reduced the number of cashier jobs available to him by seventy-five percent. (*Id.*) The VE further testified that her conclusion remained unchanged even if the same person "would likely be off task up to ten percent of the workday or workweek." (*Id.*) However, according to the VE, no work would exist if the amount of time off task each workday or workweek were increased from ten percent to twenty percent. (A.R. 62).

On October 21, 2013, the ALJ denied Plaintiff benefits in a written decision. (A.R. 19–32). The ALJ determined that Plaintiff suffered from the following severe impairments: sciatica, degenerative disc disease of the lumbar spine, lumbar radiculopathy, lumbar stenosis, type two diabetes mellitus, hypertension, and obesity. (A.R. 24). However, the ALJ found that none of Plaintiff's impairments met or equaled a listing found in 20 C.F.R. Pt. 404, subpt. P, app. 1. (A.R. 24–25). Furthermore, the ALJ found that Plaintiff's residual functional capacity ("RFC") mirrored the limitations set forth in the hypothetical to the VE. Thus, Plaintiff's RFC included his ability to stand and walk for six hours in fifteen to twenty minute intervals, as well as his need to

3

1    spend up to ten percent of each workday or workweek off task.  (A.R. 24).  In

2    determining Plaintiff's RFC, the ALJ found that Plaintiff's statements regarding the

3    "intensity, persistence, and limiting effects of his impairments [were] less than fully

4    credible."  (A.R. 25–27).  Based on Plaintiff's RFC and the testimony of the VE, the

5    ALJ concluded that Plaintiff could perform work as an office helper, storage facility

6    clerk, or cashier and, therefore, was not disabled.  (A.R. 32).

7        On December 10, 2014, the Appeals Council denied review of the ALJ's decision.

8    (A.R. 1–3).  Plaintiff initiated the instant proceedings on January 30, 2015.  (Dkt. No. 1).

9

10                    **III.   STANDARD OF REVIEW**

11        Under 42 U.S.C. § 405(g), this Court reviews the Administration's decisions to

12   determine if: (1) the Administration's findings are supported by substantial evidence;

13   and (2) the Administration used proper legal standards.  *Smolen v. Chater*, 80 F.3d 1273,

14   1279 (9th Cir. 1996) (citations omitted).  "Substantial evidence is more than a scintilla,

15   but less than a preponderance."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998)

16   (citation omitted).  To determine whether substantial evidence supports a finding, "a

17   court must consider the record as a whole, weighing both evidence that supports and

18   evidence that detracts from the [Commissioner's] conclusion."  *Auckland v. Massanari*,

19   257 F.3d 1033, 1035 (9th Cir. 2001) (internal quotation marks omitted).

20        If the evidence can reasonably support either affirming or reversing the ALJ's

21   conclusion, the Court may not substitute its judgment for that of the ALJ.  *Robbins v.*

22   *Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Flaten v. Sec'y of Health &*

23   *Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995)).  However, even if substantial

24   evidence exists in the record to support the Commissioner's decision, the decision must

25   be reversed if the proper legal standard was not applied.  *Howard ex rel. Wolff v.*

26   *Barnhart*, 341 F.3d 1006, 1014–15 (9th Cir. 2003); *see also Smolen*, 80 F.3d at 1279.

27   / / /

28   / / /

1

2

## IV.    PLAINTIFF'S CONTENTIONS

Plaintiff raises the following issues:

3

4

1.    Whether the ALJ properly assessed Plaintiff's credibility regarding his subjective complaints; and

5

6

2.    Whether the ALJ erred in relying on the testimony of the vocational expert. (Joint Stip. at 4).

7

8

## V.    DISCUSSION

9

10

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and are free from material legal error.

11    A.    The ALJ Properly Assessed Plaintiff's Credibility

12          1.    Applicable Law

13    Once a claimant produces medical evidence of an underlying impairment that is

14    reasonably likely to cause the alleged symptoms, medical findings are not required to

15    support their claimed severity. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991).

16    However, an ALJ may reject a claimant's allegations upon: (1) finding affirmative

17    evidence of malingering; or (2) providing clear and convincing reasons for so doing.

18    *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003). In providing clear and

19    convincing reasons for rejecting a claimant's assertions, "the ALJ must identify what

20    testimony is not credible and what evidence undermines the claimant's complaints."

21    *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (citing *Dodrill v. Shalala*, 12 F.3d

22    915, 918 (9th Cir. 1983)). "If the ALJ's [credibility] finding is supported by substantial

23    evidence, [a] court may not engage in second guessing." *Tommasetti v. Astrue*, 533 F.3d

24    1035, 1039 (9th Cir. 2008) (internal quotation marks omitted).

25          2.    The ALJ's Decision

26    In her decision, the ALJ found that Plaintiff's "allegations concerning the

27    intensity, persistence, and limiting effects of his symptoms are less than fully credible."

28    (A.R. 26). To support this adverse credibility determination, the ALJ noted that, despite

5

his testimony to the contrary, Plaintiff had seen a number of specialists over the course of his treatment. (*Id.*) Additionally, the ALJ determined that Plaintiff's treatment was generally conservative, non-emergency, and non-surgical, rendering it "simply inconsistent" with Plaintiff's allegations of disabling pain. (*Id.*) Similarly, the ALJ considered Plaintiff's purported wheelchair use harmful to his credibility because no doctor had prescribed Plaintiff an assistive device or observed Plaintiff using one. (*Id.*) The ALJ further discredited Plaintiff's testimony that his pain is never less than "six" out of "ten," finding it inconsistent with his reports to his doctors. (*Id.*) Moreover, the ALJ opined that Plaintiff's ability to "manage his personal care" while his family is away at work and school undermined his credibility. (*Id.*) The ALJ also found that Plaintiff's ability to work for years, despite admitted chronic back pain and diabetes, cut against his claims of disabling pain. (A.R. 27) Finally, the ALJ discredited Plaintiff's statements of disabling impairments because the medical evidence did not support his subjective complaints. (A.R. 26).

3.    Analysis

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably cause the alleged symptoms. (A.R. 29) Accordingly, the ALJ was required to provide clear and convincing reasons for rejecting Plaintiff's testimony. *See Benton*, 331 F.3d at 1040.

i.    *Plaintiff's Claimed Inability to Meet with a Specialist*

When evaluating a claimant's credibility, an ALJ may rely on "ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid." *Smolen*, 80 F.3d at 1284. Here, the ALJ determined that Plaintiff's treatment by specialists on multiple occasions undermined his claims that insurance problems continuously thwarted his attempts to see specialists. The record supports this finding. Indeed, throughout his course of treatment, Plaintiff visited a neurologist, (A.R. 330–33), a radiologist, (A.R. 374), a surgeon, (A.R. 297–302), and an

orthopedic surgeon, (A.R. 314–16). Conversely, Plaintiff's medical records show only a single instance when he was unable to secure an appointment with a specialist. (A.R. 375). Thus, the ALJ reasonably concluded that Plaintiff's asserted inability to obtain specialist treatment shows that he was "less than candid" about his treatment and impairments. *See Smolen* 80 F.3d at 1284.

### ii.   *Plaintiff's Inconsistent Statements About Pain*

When assessing a claimant's credibility, an ALJ is permitted to discount a claimant's testimony based on "prior inconsistent statements concerning [the claimant's] symptoms." *Smolen*, 80 F.3d at 1284. Accordingly, an ALJ may discredit a claimant's statements of disabling pain when those statements are inconsistent with reports of less pain to his doctors. *See Terrazas v. Comm'r of Soc. Sec. Admin.*, 500 F. App'x 628, 630 (9th Cir. 2012) (affirming ALJ's credibility determination where claimant's testimony "of constant pain all the time was inconsistent with her statements to her doctors"). Here, the record supports the ALJ's finding that Plaintiff's testimony that his pain is always a "six" or worse conflicted with his statements to his doctors. Plaintiff's medical records indicate that he routinely reported that his pain was at level "three" or "four." (A.R. 269, 285, 315, 320, 323, 329, 332, 334, 368). Indeed, on at least one occasion, Plaintiff described his pain at "zero" out of "ten." (A.R. 286). Thus, substantial evidence supports the ALJ's finding that Plaintiff's prior inconsistent statements render his testimony about disabling pain not entirely credible.

Additionally, Plaintiff's argument that the ALJ failed to take into account that Plaintiff's ailment was progressing is unpersuasive. The ALJ did not discredit Plaintiff's allegations of intense pain that are found in the medical records. Rather, the ALJ merely discredited Plaintiff's testimony that his pain is never less than a level "six." As noted above, the record contains multiple instances when Plaintiff reported that his pain level was lower than a "six." As a result, Plaintiff's argument fails.

///

///

7

### iii.   Testimony Inconsistent with Objective Medical Evidence

"While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)); *see also Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007). Here, the ALJ discounted Plaintiff's stated need for a wheelchair because Plaintiff's medical records indicate that Plaintiff was neither prescribed an assistive device nor observed using one. This evidence suggests not only that Plaintiff may not have used a wheelchair but also that no doctor believed Plaintiff's impairments required one. Accordingly, the lack of support in the record for Plaintiff's purported wheelchair use was a clear and convincing reason to find Plaintiff's statements about his impairments less than fully credible. *Cf. Chaudhry v. Astrue*, 688 F.3d 661, 671 (9th Cir. 2012) (affirming the ALJ's decision where the ALJ determined that the claimant's non-prescribed use of a cane and wheelchair adversely affected his credibility).

### iv.   Plaintiff Continued to Work Despite His Impairments

An ALJ may permissibly conclude that a claimant's "ability to work with similar impairments in the past undermines [the claimant's] claimed inability to work now." *Hubble v. Astrue*, 467 F. App'x. 675, 677 (9th Cir. 2012) (citing *Gregory v. Bowen*, 844 F.2d 666–67 (9th Cir. 1988)). Here, the ALJ found that Plaintiff's credibility was adversely affected because his impairments "did not prevent [him] from working prior to the alleged onset date."[1]  (A.R. 27). On January 3, 2012, Plaintiff reported to his physician that he had suffered from diabetes for six years and chronic back pain for seven years. (A.R. 362). Because Plaintiff stopped working on October 19, 2011, it appears that he was able to work for about six years after his diabetes and chronic back

---

[1] A claimant's "alleged onset date" is the date on which the claimant asserts that his impairments rendered him disabled under the Social Security Act. SSR 83-20, 1983 WL 31249, at *1 (Jan. 1, 1983).

1   pain started.  Moreover, at the January 3, 2012, appointment, Plaintiff stated that his
2   current back pain was only a "three" out of "ten" on the pain intensity scale.  (*Id.*)  This
3   report of mild pain after Plaintiff's alleged onset date suggests that Plaintiff's symptoms
4   were not substantially less severe while he was working.  Therefore, the record supports
5   the ALJ's finding that Plaintiff's "ability to work with similar impairments in the past"
6   casts doubt upon his allegations of disabling symptoms.  *Hubble*, 467 F. App'x at 677
7   (citations omitted).

8                    *v.       Harmless Errors*

9          "[H]armless error principles apply in the Social Security . . . context."  *Molina v.*
10  *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citing *Stout v. Comm'r, Soc. Sec. Admin.*,
11  454 F.3d 1050, 1054 (9th Cir. 2006)).  An ALJ's error is harmless when it is "clear from
12  the record that [the] ALJ's error was 'inconsequential to the ultimate nondisability
13  determination.'"  *Robbins*, 466 F.3d at 885 (quoting *Stout*, 454 F.3d at 1055–56).  Where
14  an ALJ provides clear and convincing reasons for discrediting a claimant's statements,
15  impermissible additional reasons are harmless unless they "negate the validity of the
16  ALJ's ultimate conclusion."  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190,
17  1197 (9th Cir. 2004) (finding that an error in the ALJ's credibility assessment was
18  harmless because the ALJ's decision also stated multiple permissible reasons to discredit
19  the claimant's testimony).

20         Here, the ALJ's credibility evaluation contained several errors.  First, Plaintiff's
21  minimal daily activities are not inconsistent with his claimed limitations and, therefore,
22  do not adversely affect his credibility.  *See Reddick*, 157 F.3d at 722 (daily activities
23  harm a claimant's credibility "only if the level of activity [is] inconsistent with the
24  [c]laimant's claimed limitations").  Additionally, Plaintiff's treatment was not
25  conservative, as it consisted of narcotic medications and epidural shots.  *See Garrison v.*
26  *Colvin*, 759 F.3d 995, 1015 n. 20 (9th Cir. 2014).  Nor was Plaintiff's treatment
27  infrequent, as it involved visits to specialists every few months.  Notwithstanding these
28  errors, the ALJ provided multiple clear and convincing reasons, supported by the record,

1  for discrediting Plaintiff's testimony.  Accordingly, the ALJ's errors do not "negate the

2  validity of the [her] ultimate conclusion" and are harmless.  *Batson*, 359 F.3d at 1197.

3  B.     The ALJ Properly Relied on the Testimony of the VE

4          Plaintiff argues that the ALJ impermissibly relied on testimony from the VE that

5  deviated, without explanation, from the *Dictionary of Occupational Titles* ("DOT").

6  Specifically, Plaintiff asserts that the VE's testimony conflicted with the DOT because

7  the DOT does not address Plaintiff's inability to stay on task throughout the entire

8  workday.  (Joint Stip. at 21–22).  Additionally, Plaintiff claims that the VE

9  impermissibly opined that Plaintiff could perform work as a cashier, storage facility

10 clerk, or office helper, despite his incapacity to stand or walk for more that fifteen to

11 twenty minutes at a time.  (Joint Stip. at 20–21).

12         At step five of the sequential evaluation,[2] the burden shifts to the ALJ to show that

13 a claimant can perform work that exists in significant numbers in the national economy.

14 *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  An ALJ may meet this burden by

15 calling a VE to testify about "(1) what jobs the claimant, given his or her residual

16 functional capacity, would be able to do; and (2) the availability of such jobs in the

17 national economy."  *Id.* at 1101.  However, because the DOT is the presumptive

18 authority on "how a job is generally performed," *Pinto v. Massanari*, 249 F.3d 840, 845

19 (9th Cir. 2001) (citations omitted), an ALJ may not disregard, without explanation,

20 conflicts between the DOT and a VE's testimony, *see Johnson v. Shalala*, 60 F.3d 1428,

21 1434–35 (9th Cir. 1995).

22 / / /

23 _____

24         [2] The five-step sequential evaluation process is the multi-level analysis that an

25 ALJ employs to determine whether a person is disabled under the Social Security Act.

26 20 C.F.R. § 404.1520(a)(4).  If the ALJ conclusively determines at any step that a

27 claimant is or is not disabled, the ALJ does not proceed to the next step.  *Id.*  If the ALJ

28 completes step five and concludes that a claimant's limitations do not preclude work
existing in significant numbers in the national economy, the claimant is considered not
disabled.  20 C.F.R. §404.1520(a)(4)(v).

1       1.     Ten Percent of the Workday or Workweek Off Task

The Ninth Circuit has not conclusively held that a VE's testimony conflicts with the DOT when the DOT is silent on a limitation considered by the VE.[3]  However, the Ninth Circuit has found that "[a] VE's recognized expertise provides the necessary foundation for his or her testimony."  *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005).  Applying this principle, some district courts have concluded that VEs do not deviate from the DOT when they testify about characteristics not included in the DOT.  *See*, *e.g.*, *Coleman v. Colvin*, 2014 WL 4080007, at *4 (C.D. Cal. Aug. 8, 2014) (citations omitted) (court "decline[d] to find an 'apparent' conflict when the DOT is silent about a particular mental or physical requirement and the claimant's counsel failed to raise or identify any conflict to the ALJ"); *Herrera v. Colvin*, 2014 WL 3572227, at *9 (C.D. Cal. July 21, 2014) (VE's testimony permissibly supplemented the DOT where the DOT was silent on whether certain jobs could "accommodate a sit/stand option"); *Strain v. Colvin*, 2014 WL 2472312, at *2 (C.D. Cal. June 2, 2014) (finding no apparent conflict between the VE's testimony and the DOT where the VE testified about a sit/stand option not addressed by the DOT).

Under these circumstances, the Court concludes that the VE did not deviate from the DOT when she testified about Plaintiff's need to spend up to ten percent of the workday or workweek off task.  As an initial matter, it is unclear how this specific limitation is even latently inconsistent with the requirements for work as a cashier, office helper, or storage facility clerk.  Additionally, the Court notes that if VEs were constrained to consider only characteristics within the DOT, conflicts would arise often,

---

[3] Moreover, the few cases in which the Ninth Circuit has addressed the issue are neither published nor directly applicable to the present circumstances.  *See Ocegueda v. Colvin*, 630 F. App'x 676, 678 (9th Cir. 2015) (ALJ did not call a VE to testify about whether work as a beautician could be performed with a sit/stand option); *Buckner-Larkin v. Astrue*, 450 F. App'x 626, 628–29 (9th Cir. 2011) (discussing the omission of a claimant's limitation from the DOT only insofar as the VE explained the difference); *Coleman v. Astrue*, 423 F. App'x 754, 756 (9th Cir. 2011) (ALJ failed altogether to inquire about a potential conflict between the VE's testimony and the DOT).

1  as the DOT does not address many probative mental limitations.  *See*, *e.g.*, *Fleener v.*
2  *Colvin*, 2015 WL 5521992, at *6 (D. Or. Sept. 15, 2015) (citations omitted) (recognizing
3  that the DOT "does not address a plaintiff's limitations related to concentration,
4  persistence, or pace or other non-exertional limitations").  Such incessant conflict would
5  be inconsistent with the role and purpose of the VE.  *See* SSR 83-12, 1983 WL 31253, at
6  *3 (Jan. 1, 1983) (VE assistance is "advisable" when claimant's limitations do not fall
7  squarely with established criteria); *see also Sample v. Schweiker*, 694 F.2d 639, 643 (9th
8  Cir. 1982) (VE's purpose is to "translate[] factual scenarios into realistic job market
9  probabilities"); *Bayliss*, 427 F.3d at 1218.  Moreover, while they have not squarely
10  addressed this specific issue, some courts within this circuit have implicitly accepted a
11  VE's consideration of a claimant's need to spend a percentage of the workday off task.
12  *See*, *e.g.*, *Gordon v. Colvin*, 2015 WL 685396, at *7 (C.D. Cal. Feb. 17, 2015); *Basulto*
13  *v. Colvin*, 2014 WL 1266784, at *7 (C.D. Cal. Mar. 26, 2014); *Lea v. Colvin*, 2015 WL
14  997863, at *6 (D. Ariz. Mar. 5, 2015).  As a result, the Court finds that the VE's
15  testimony was not defective.

16       Plaintiff further argues that the VE's testimony was inconsistent with the DOT
17  because no employer would allow an employee to be off task for ten percent of the
18  workday in addition to regular breaks.  However, Plaintiff ultimately fails to cite any
19  source supporting this conclusion.  Accordingly, the Court defers to the "recognized
20  expertise" of the VE, who opined that Plaintiff's limitations do not preclude
21  employment.  *Bayliss*, 427 F.3d at 1218.

22       2.    Standing and Walking Limitation

23       Plaintiff challenges the VE's consideration of his standing and walking limitations
24  on two bases.  First, Plaintiff argues that the VE's testimony was defective because the
25  DOT does not address his need to sit after fifteen to twenty minutes of standing or
26  walking.  (Joint Stip. at 21).  The Court dismisses this argument for the reasons
27  discussed in the preceding section.  Second, Plaintiff ostensibly contends that, because
28  the DOT classifies the jobs identified by the VE as "light work," they require him to

12

1    stand for six hours daily and, therefore, conflict with his standing and walking
2    limitation.[4]   (Joint Stip. at 21).   This contention is addressed below.
3         The DOT classifies the occupations of office helper (DOT 239.567-010, 1991 WL
4    672232), storage facility clerk (DOT  295.367-026, 1991 WL 672594), and cashier
5    (DOT 211.462-010, 1991 WL 671840), as "light work."[5]  As Plaintiff rightly points out,
6    an employee is incapable of performing all occupations listed as light work if he is
7    unable to stand for six hours per day.  *See* SSR 83-10, 1983 WL 31251, at *6 (Jan. 1,
8    1983) (discussing the capabilities necessary to engage in the *full range* of light work).
9    However, not all jobs classified as light work require employees to stand for six hours.
10   *See* DOT, app. C; *see also* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) ("The
11   DOT lists the maximum requirements of occupations as generally performed, not the
12   range of requirements of a particular job as it is performed in specific settings.").
13   Accordingly, some claimants will be able to perform a limited number of jobs classified
14   as light work despite their inability to stand for six hours per day.  *See Barstad v. Chater*,
15   76 F.3d 384, at *2 (9th Cir. 1996) (unpublished table opinion).   Thus, a VE's testimony
16   is not defective when she opines that a claimant's limitation to less than six hours of
17   standing restricts him to a smaller number of jobs within the light work category.  *See*
18   *Distasio v. Shalala*, 47 F.3d 348, 350 (9th Cir. 1995) ("[V]ocational experts can testify
19   whether particular applicants for disability benefits would be able to perform
20   subcategories of jobs within the DOT.").

---

22   [4] Significantly, Plaintiff does not challenge the ALJ's finding that Plaintiff
23   possessed the RFC to stand for six hours out of an eight hour workday.  However, in
     order to address Plaintiff's argument presented here, the Court assumes, *without finding*,
24   that Plaintiff was unable to stand for six hours each day.

25   [5] The DOT assigns work to one of five exertional categories: sedentary, light,
26   medium, heavy, and very heavy.  *Dictionary of Occupational Titles*, Appendix C –
     Components of the Definition Trailer, 1991 WL 688702 (Jan. 1, 2016) (hereinafter
27   "DOT, app. C").  An occupation's physical requirements determine the exertion level to
28   which it is assigned.  *Id.*

13

Here, the VE testified that Plaintiff can perform work as an office helper, storage facility clerk, and cashier.[6] (A.R. 61). Nothing in the definitions of these occupations suggests that they require an employee to stand for six hours out of an eight hour day. Furthermore, the VE reduced the number of cashier jobs available to Plaintiff to those "*at the light end where there's often a chair or a stool that allows alternate sitting and standing*."[7] (*Id.*) (emphasis added). Therefore, it is clear that the VE's testimony was congruent with both Plaintiff's standing and walking limitation and the principle that some jobs will not demand performance of the maximum requirements of an exertional category. *See* SSR 00-4p, 2000 WL 1898704, at *3. Accordingly, the Court is satisfied that the VE correctly recognized Plaintiff's restriction to a reduced range of light work and permissibly opined that Plaintiff is able to perform a "subcategory[y] of jobs within the DOT." *Distasio*, 47 F.3d at 350.

In sum, Plaintiff has failed to show that the VE's consideration of Plaintiff's limitations caused her testimony to deviate from the criteria of the DOT. Rather, based on the foregoing analysis, the Court finds that the DOT's failure to address two of Plaintiff's limitations does not, by itself, create an apparent conflict between the DOT and the VE's testimony. Moreover, because the VE's testimony was consistent with the notion that a claimant may perform a limited range of work within an exertional category, her testimony did not conflict with the DOT. Therefore, the ALJ was permitted to rely on the testimony of the VE.

/ / /

---

[6] The Court further notes that these three occupations may not be all of the occupations Plaintiff can perform, as the VE supplied these DOT listings after the ALJ asked for "three examples" of jobs Plaintiff could perform. (A.R. 61).

[7] Although the VE opined that only the number of cashier positions would be reduced because of Plaintiff's standing and walking limitation, the Court assumes that the limitation also informed the remainder of the VE's analysis. Thus, the other jobs that the VE testified Plaintiff could perform, storage facility clerk and office helper, presumably allow for Plaintiff to sit every fifteen to twenty minutes.

# VI.   CONCLUSION

The legally valid reasons given by the ALJ for discounting Plaintiff's credibility cause the Court to conclude that the ALJ's credibility finding was based on permissible grounds.  The Court therefore defers to the ALJ's credibility determination.  *See Lasich v. Astrue*, 252 F. App'x 823, 825 (9th Cir. 2007) (courts will defer to ALJ's credibility determination when the proper process is used and proper reasons for the decision are provided); *accord Flaten*, 44 F.3d at 1464.  Furthermore, the Court finds that the VE's testimony did not conflict with the DOT.  Therefore, the ALJ did not err when she relied on the VE's findings about jobs Plaintiff is able to perform.  Because the ALJ's decision is supported by substantial evidence in the record and relies on permissible legal standards, the Court must affirm the ALJ's decision.

# ORDER

For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: May 25, 2016

_____/S/FREDERICK F. MUMM_____
FREDERICK F. MUMM
UNITED STATES MAGISTRATE JUDGE
